MCGRAIL & BENSINGER LLP
888-C 8th Avenue #107
New York, New York 10019
(201) 931-6910
Ilana Volkov
David C. McGrail
Cynthia L. Botello
ivolkov@mcgrailbensinger.com
dmcgrail@mcgrailbensinger.com
cbotello@mcgrailbensinger.com

*Proposed Counsel to Trask Radio LLC and*
*Advanced Aerospace LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| TRASK RADIO LLC and ADVANCED AEROSPACE LLC, | Case No.: _____ |
| Debtors in Possession. | (Joint Administration Pending) |

**AFFIDAVIT PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

ERIC L. EINSTEIN, being duly sworn, deposes and says:

1. I am a member of Trask Radio LLC ("Trask"), and the manager of Advanced Aerospace LLC d/b/a Balcon Salon ("Balcon Salon," and together with Trask, the "Debtors"). I am familiar with the facts and circumstances as recited herein.

**NATURE OF THE DEBTORS' BUSINESS**

2. The Debtors are New York limited liability companies and, through, Balcon Salon, operate a bar that is a pillar of the Hell's Kitchen gay community.

3. Specifically, Balcon Salon operates a bar at 674 9th Avenue, New York, NY 10036 (the "Hell's Kitchen Property"). Balcon Salon leases the Hell's Kitchen Property from Trask, the fee owner.

4. Each debtor is owned, directly or indirectly, 51% by Eric L. Einstein and 49% by Justin Buchanan.

## THE DEBTORS' CAPITAL STRUCTURE

5. On March 23, 2023, the Debtors entered into a Loan Agreement (the "Loan Agreement") with a predecessor to Newtek Business Services Holdco 6, Inc. ("Newtek"), pursuant to which Newtek lent the Debtors the total original principal amount of $7,152,000.00 (the "Newtek Loan"). The Newtek Loan was intended to be an interim loan pending the Debtors' procurement of permanent financing through the SBA 504 Program (as defined below).

6. Trask granted Newtek a first priority mortgage on the Hell's Kitchen Property to secure repayment of the Newtek Loan (the "Mortgage"). As additional security for the Newtek Loan, the Debtors granted Newtek a security interest in all of Trask's right, title and interest in their personal property. Additionally, repayment of the Newtek Loan is guaranteed by non-debtor affiliates Tito Rocks LLC, Physical Onion LLC d/b/a Hardware Bar, Rainbow Starship LLC d/b/a Playhouse Bar, Pieces Bar LLC (collectively, the "Non–Debtor Affiliates"), and Messrs. Einstein and Buchanan.

7. Newtek claims in the Foreclosure Action (as defined below), that as of July 16, 2025, it is owed $7,132,915.46 under the Newtek Loan.

8. In July 2024, the Debtors also obtained a loan from Business Initiative Corporation of New York ("BIC") in the original principal amount of $5,000,000.00 (the "BIC Loan"), the proceeds of which were used to pay off the Newtek Bridge Loan (as defined below).

Trask granted BIC a second priority mortgage on the Hell's Kitchen Property and the Debtors granted BIC a second priority security interest in their personal property to secure repayment of the BIC Loan; additionally, the BIC Loan is guaranteed by Tito Rocks LLC and Messrs. Einstein and Buchanan. As of July 16, 2025, BIC was owed approximately $4,945,000.00. The BIC Loan and all rights in the BIC Loan documents were assigned to the SBA.

9. The Debtors' trade debt, on a consolidated basis, totals approximately $10,000.00.

10. In 2024, Balcon Salon generated revenue from operations in the amount of $1,455,734.00.

## CIRCUMSTANCES LEADING TO THE DEBTORS' CHAPTER 11 FILINGS

11. In May 2021, Balcon Salon leased the Hell's Kitchen Property from Premier 674 Ninth, LLC ("Premier") for 15 years.

12. In March 2022, shortly after taking possession of the Hell's Kitchen Property as leaseholder and commencing demolition work, Balcon Salon discovered significant structural damage to property that required immediate and costly renovation. When Balcon Salon realized the buildout of the Hell's Kitchen Property would be significantly more expensive than anticipated, it understood that borrowing funds for the construction would be necessary.

13. Balcon Salon approached its then bank, Spring Bank N.A. ("Spring Bank"), for a construction loan. Spring Bank suggested the idea of buying the building and, thus also funding construction at a lower interest rate, under the U.S. Small Business Administration's ("SBA") 504 loan program (the "SBA 504 Program") as opposed to pursuing a construction loan under the SBA 7a program. I understand that the SBA 504 Program is designed to provide long-term, fixed rate financing to promote business growth and job creation.

3

14. The Debtors' evaluation of their financing needs and costs under the SBA 504 Program led them to agree to purchase the Hell's Kitchen Property from Premier for $7 million.

15. From June to July of 2022, I worked with the Business Initiative Corporation of New York ("BIC") via Spring Bank to get approval for the project under the SBA 504 Program, under which the lending limit was $5 million; I understood that the remaining $7 million loan would be financed by Spring Bank. I later learned that the required loan amount of $7 million was above Spring Bank's lending limit and, therefore, Spring Bank would have to syndicate the loan. However, I was assured this would not be a problem as syndication was not atypical for the bank.

16. Based on these lending commitments, in August 2022, Trask entered into an agreement to purchase the Hell's Kitchen Property from Premier for $7 million.

17. Unfortunately, the next month, Spring Bank's partners in the syndicate withdrew and Spring Bank backed out from the loan altogether.

18. From September 2022 to January 2023, with the SBA 504 Program approval in hand, I contacted dozens of participating lenders to ascertain whether they would be willing to fund the acquisition of the Hell's Kitch Property.

19. In March 2023, the Debtors finalized the framework of the requisite financing with Newtek. Newtek provided the Debtors with two "bridge" loans, which allowed Trask to close on the purchase of the Hell's Kitchen Property and enabled Balcon Salon to have funds for construction: one loan was for $7,152,000 (defined above as the Newtek Loan) and the other loan was for approximately $4,800,000 (the "Newtek Bridge Loan").

20. Both loans were interest-only and bore interest at prime+6.5% (for a total

4

of 11.5%), with daily floating rates. I understand that the bridge period at these high rates was allowed to last only nine months under the SBA 504 Program.

21. Due to the poor performance of both the general contractor and project manager, the construction project experienced numerous delays. It was not until October 2023 that Balcon Salon finally opened for business.

22. In December 2023, the Debtors needed to extend the bridge period for both loans. Newtek agreed, but required the Debtors to pay for the extension; this was an unanticipated cost of the project and further drained the already scarce resources. Moreover, the Debtors were required to pay the higher interest rate under the interim Newtek Loan for an extra four months.

23. In April 2024, Newtek finally accepted that the risk from construction was eliminated and agreed to fix the Newtek Loan at its permanent, lower interest rate of 7.84%; under the permanent loan, the Debtors were required to make principal payments in addition to interest.

24. In May 2024, Trask finally received its final Certificate of Occupancy from the New York City Department of Buildings; this was a condition precedent to BIC agreeing to consummate the BIC Loan. Accordingly, in July 2024, the Debtors and BIC closed on the BIC Loan, the proceeds of which were used to satisfy the Newtek Bridge Loan. Until that time, the Debtors were paying 11.5% interest on the Newtek Bridge Loan instead of the five percent (5%) rate under the BIC Loan.

25. During this period, I advanced funds to the Debtors to enable them to continue making payments on both the construction project and their loan servicing obligations. The additional outlays resulting from the increased construction costs and unanticipated loan servicing totaled approximately $3,000,000.00. When the permanent loans—consisting of what are now the Newtek Loan and BIC Loan—replaced the interim loans in 2024, the payments were

significantly higher than originally forecast due to the prevailing interest rate.

26. The Debtors' difficulties were further exacerbated by a general decline in business beginning in 2022, driven by a decrease in alcohol consumption. This downturn resulted in Balcon Salon's receipts being substantially lower than projected following its opening in October 2023.

27. To alleviate the Debtors' liquidity challenges, I made loans to the Debtors and Non-Debtor Affiliates in the total principal amount of $2,115,267.00 in December 2024.

28. Additionally, neither I nor Mr. Buchanan received compensation from the Debtors from July 2024 until March of 2025.

29. In December 2024, it became clear that the Debtors would be unable to continue servicing their debt to Newtek and BIC. Therefore, on the day before making their final loan payment for December 2024, the Debtors and Non-Debtor Affiliates approached Newtek to initiate settlement discussions and allow a period for dialogue regarding their liquidity challenges. Although the Debtors made several good faith overtures and proposals, they were flatly rejected without any counter-offer from Newtek.

30. On May 7, 2025, an appraiser retained by Newtek issued a formal report appraising the Hell's Kitchen Property at $8,220,000.00.

31. On July 16, 2025, Newtek commenced a foreclosure action in New York Supreme Court titled *Newtek Business Services Holdco 6, Inc. v. Trask Radio, LLC; Advanced Aerospace LLC d/b/a Balcon Salon; Tito Rocks LLC; Physical Onion LLC d/b/a Hardware Bar; Pieces Bar LLC; Eric L. Einstein; Justin Buchanan; U.S. Small Business Administration; and "John Doe #1" through "John Doe #12,"* Index No. 850306/2025 (the "Foreclosure Action").

32. On October 8, 2025, Newtek filed a motion to appoint a temporary receiver

6

in the Foreclosure Action (the "Receivership Motion"). The hearing on the Receivership Motion is scheduled for November 7, 2025.

33. Since the commencement of the Foreclosure Action, the Debtors and Non-Debtor Affiliates have engaged in further extensive discussions with Newtek's counsel in an effort to resolve the alleged payment default, but those efforts were unsuccessful as each settlement proposal made was rejected by Newtek. Through counsel, the Debtors even contacted Newtek the day before the commencement of these cases to ascertain whether a forbearance arrangement could be agreed upon to avoid the filings; however, Newtek declined to engage in such discussions.

34. The Debtors do not have the financial wherewithal to fight the Foreclosure Action, including the Receivership Motion.

35. Accordingly, to preserve the value of their assets for the benefit of all creditors, on October 31, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

36. The Debtors have filed certain so-called "First Day Motions." The relief the Debtors request is for (i) authority to pay pre-petition (A) compensation to Balcon Salon's employees and contractors and related matters and (B) sales taxes, and (ii) prohibiting utilities from altering, refusing, or discontinuing services and related matters. The Debtors are seeking this relief to ensure that the filing of their chapter 11 cases does not cause a disruption in their post-petition business operations, to preserve the value of their businesses and assets for the benefit of all creditors, and to give the Debtors the necessary "breathing room" to propose and confirm a plan of reorganization within the time allotted by the Bankruptcy Code.

**PARTICULAR INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2**

26. Bankruptcy Rule 1007(d) and Local Bankruptcy Rule 1007-2 require the Debtors to disclose certain information related to these cases, which is set forth below.

27. The Debtors do not have any stock that is publicly held and no committee was organized prior to filing of these chapter 11 cases.

28. Set forth on **Exhibit A** attached hereto and incorporated herein by reference is a list of the names, addresses, and telephone numbers of the creditors holding the 20 largest unsecured claims against the Debtors on a consolidated basis. This list includes the amount of the claim, the nature of the claim, and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured.

29. Set forth on **Exhibit B** attached hereto and incorporated herein by reference is a list of the names, addresses, and telephone numbers of the creditors holding secured claims against the Debtors, the estimated amount of the claims, a brief description and an estimate of the value of the collateral securing the claims (if known), and whether the claims or liens are disputed.

30. Set forth on **Exhibit C** attached hereto and incorporated herein by reference is a list containing a summary of each Debtor's assets and liabilities.

32. None of the Debtors' property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor or agent for any such entity.

33. The Debtors' property is located at 674 9th Avenue, New York, New York 10036. The Debtors' books and records are located at 8 Christopher Street, New York, NY 10014. The Debtors do not have any assets outside the United States.

34. There are no actions or proceedings, pending or threatened, against the Debtors or their property where a judgment against them or a seizure of their property is imminent.

35. Set forth on **Exhibit D** attached hereto and incorporated herein by reference are the names of the Debtors' existing senior management, their tenure with the Debtors, and a summary of their relevant responsibilities and experience.

### INFORMATION RELATING TO THE DEBTORS' INTENTION TO CONTINUE TO OPERATE THEIR BUSINESS

36. The Debtors intend to continue to operate as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

39. For the 30-day period following the commencement of these chapter 11 cases, the Debtors' expected sales will be approximately $125,000.00; the anticipated expenses will total approximately the same amount, resulting in an anticipated net cash gain of $0 for that time period.

### CONCLUSION

40. The Debtors believe that the protections afforded by chapter 11 will enable them to maintain their current operations in the ordinary course of business for the benefit of their creditors and their estates. They also respectfully request that the Court grant the "first day" motions.

41. The Debtors reserve the right to amend or supplement any of the schedules annexed hereto as exhibits in the event additional information is obtained by the Debtors during the course of these cases.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Eric L. Einstein

Sworn to before me on this
31st day of October, 2025

_____
Notary Public
Commission Expires:

**RHOIDY RODRIGUEZ**
**Notary Public - State of New York**
**No. 01RO0032565**
**Qualified in Kings County**
**My Commission Expires Jan. 06, 2029**

## **EXHIBIT A**

**List of 20 Largest Unsecured Creditors**

## LIST OF THE CREDITORS THAT HOLD THE 20 LARGEST UNSECURED CLAIMS

The following is a list of the creditors that hold the 20 largest unsecured claims in the Chapter 11 case of debtors and debtors-in-possession Trask Radio LLC and Advanced Aerospace LLC d/b/a Balcon Salon.  This list is prepared in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure and does not include (i) persons who come within the definition of "insider" set forth in Bankruptcy Code § 101 or (ii) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims.  This list reflects amounts as of October 31, 2025.  While every effort has been made to provide accurate and complete information in this list, inadvertent errors or omissions may exist.  Nothing in this list shall constitute a waiver of any party-in-interest's rights to seek to avoid liens, challenge the secured status of any creditor or the value of its purported collateral, recover property of the estate, assert causes of action against any creditor, or otherwise.

| (1) NAME OF CREDITOR AND COMPLETE MAILING ADDRESS INCLUDING ZIP CODE | (2) NAME, TELEPHONE NUMBER, TELECOPY NUMBER, AND COMPLETE MAILING ADDRESS, INCLUDING ZIP CODE, OF EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM WHO MAY BE CONTACTED | (3) NATURE OF CLAIM (TRADE DEBTS, BANK LOANS, GOVERNMENT CONTRACT, ETC.) | (4) INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | (5) AMOUNT OF CLAIM (IF SECURED, ALSO STATE VALUE OF SECURITY) |
|---|---|---|---|---|
| ConEdison<br>PO Box 1701,<br>New York, NY 10116 | ConEdison<br>PO Box 1701,<br>New York, NY 10116<br>Ph: 212-243-1900<br>Fax: 212-844-0110 | Utilities | | $2,609.65 |

| (1) NAME OF CREDITOR AND COMPLETE MAILING ADDRESS INCLUDING ZIP CODE | (2) NAME, TELEPHONE NUMBER, TELECOPY NUMBER, AND COMPLETE MAILING ADDRESS, INCLUDING ZIP CODE, OF EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM WHO MAY BE CONTACTED | (3) NATURE OF CLAIM (TRADE DEBTS, BANK LOANS, GOVERNMENT CONTRACT, ETC.) | (4) INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | (5) AMOUNT OF CLAIM (IF SECURED, ALSO STATE VALUE OF SECURITY) |
|---|---|---|---|---|
| LCD Elevator Repair, Inc<br>224 E 2nd St., Suite 200<br>Mineola, NY 11501 | LCD Elevator Repair, Inc.<br>224 E 2nd St., Suite 200<br>Mineola, NY 11501<br>Ph: 516-705-8817<br>Fax: 516-378-1282 | Maintenance Contractor | | $1,166.04 |
| Van Deusen & Associates, Inc.<br>120 Eagle Rock Ave, Suite 310<br>East Hanover, NJ 07936 | Van Deusen & Associates, Inc.<br>120 Eagle Rock Ave., Suite 310<br>East Hanover, NJ 07936<br>Ph: 973-994-9220<br>Fax: Not Available | Maintenance Contractor | | $1,081.63 |
| Citywide Safety Compliance<br>31-70 College Point Blvd.,<br>Flushing, NY 11354 | Citywide Safety Compliance<br>31-70 College Point Blvd.,<br>Flushing, NY 11354<br>Ph: 718-321-9329<br>Fax: Not Available | Water Testing | | $525.00 |
| A&J Fire Extinguisher Corp.,<br>P.O. Box 170016<br>Brooklyn, NY 11217 | A&J Fire Extinguisher Corp.,<br>PO Box 170016<br>Brooklyn, NY 11217<br>Ph: 718-852-2762<br>Fax: Not Available | Supplier | | $180.73 |

## EXHIBIT B

**Creditors Holding Secured Claims**

## **LIST OF THE CREDITORS HOLDING SECURED CLAIMS**

The following is a list of the creditors holding secured claims in the Chapter 11 case of debtors and debtors-in-possession Trask Radio LLC and Advanced Aerospace LLC d/b/a Balcon Salon. This list reflects amounts as of October 31, 2025. While every effort has been made to provide accurate and complete information in this list, inadvertent errors or omissions may exist. Nothing in this list shall constitute a waiver of any party-in-interest's rights to seek to avoid liens, challenge the secured status of any creditor or the value of its purported collateral, recover property of the estate, assert causes of action against any creditor, or otherwise.

| (1) NAME OF CREDITOR AND COMPLETE MAILING ADDRESS INCLUDING ZIP CODE | (2) NAME, TELEPHONE NUMBER, TELECOPY NUMBER, AND COMPLETE MAILING ADDRESS, INCLUDING ZIP CODE, OF EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM WHO MAY BE CONTACTED | (3) NATURE OF CLAIM (TRADE DEBT, BANK LOAN, GOVERNMENT CONTRACT, ETC.) | (4) INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | (5) AMOUNT OF CLAIM (IF SECURED, ALSO STATE VALUE OF SECURITY) |
|---|---|---|---|---|
| Newtek Business Services Holdco 6, Inc. 136-29 38th Street Flushing, NY 11354 | Newtek Bank 136-29 38th Street Flushing, NY 11354 Ph: 888-681-7238 Fax: Not Available | Mortgage and Security Interest | | (Approximately) $7,132,915, secured by real estate valued at $8,220,000 (1st priority) |
| U.S. Small Business Administration, as assignee of Business Initiative Corporation of New York 26 Federal Plaza, Suite 3100, New York, NY 10278 | John E. Gura, Jr. Assistant United States Attorney 86 Chambers Street New York, NY 10007 Ph: 212-637-2712 Fax: 212-637-2717 | Mortgage and Security Interest | | (Approximately) $4,945,371, secured by real estate valued at $8,220,000 (2nd priority) |

# **EXHIBIT C**

**Summary of the Debtors' Assets and Liabilities**

**Trask Radio LLC**
Balance Sheet
As of September 30, 2025

| | | |
|---|---:|---:|
| **ASSETS** | | |
| **Current Assets** | | |
| Cash | $ | 647 |
| Chapter 11 Professional Retainers | | 75,000 |
| Total Current Assets | | 75,647 |
| | | |
| Fixed Assets, Net | | 6,733,685 |
| Intangibles, Net | | 222,441 |
| Total Fixed Assets and Intangibles | | 6,956,126 |
| | | |
| Due from Advanced Aerospace LLC | | 371,443 |
| | | |
| **TOTAL ASSETS** | $ | **7,403,216** |
| | | |
| **LIABILITIES & EQUITY** | | |
| Liabilities | | |
| Long Term Liabilities | | |
| Newtek | | 7,132,915 |
| BIC | | 4,945,371 |
| Total Long Term Liabilities | | 12,078,286 |
| Total Liabilities | | 12,078,286 |
| | | |
| Equity | | (4,675,070) |
| | | |
| **TOTAL LIABILITIES & EQUITY** | $ | **7,403,216** |

**Advanced Aerospace LLC d/b/a Balcon Salon**
Balance Sheet
As of September 30, 2025

| | | |
|---|---:|---:|
| **ASSETS** | | |
| **Current Assets** | | |
| Cash | $ | 65,374 |
| Credit Card Receivables | | 4,006 |
| Inventory | | 38,804 |
| Chapter 11 Professional Retainers | | 75,000 |
| **Total Current Assets** | | 183,184 |
| | | |
| **Fixed Assets, Net** | | 5,988,836 |
| **Intangibles, Net** | | 1,562,972 |
| **Total Fixed Assets and Intangibles** | | 7,551,808 |
| | | |
| **Security Deposits** | | 420 |
| **TOTAL ASSETS** | $ | 7,735,412 |
| | | |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| Accounts Payable | $ | 116,426 |
| Credit Card Tips Payable | | 8,768 |
| Owed to Trask Radio | | 371,443 |
| Sales Tax Payable | | 9,743 |
| **Total Current Liabilities** | | 389,953 |
| | | |
| **Long Term Liabilities** | | |
| Newtek | | 7,132,915 |
| BIC | | 4,945,371 |
| **Total Long Term Liabilities** | | 12,078,286 |
| **Total Liabilities** | | 12,468,239 |
| | | |
| **Equity** | | (4,732,827) |
| | | |
| **TOTAL LIABILITIES & EQUITY** | $ | 7,735,412 |

# **EXHIBIT D**

**The Debtors' Senior Management**

**The Debtors' Senior Management**

| Name/Position | Relevant Experience/Responsibilities |
|---|---|
| Eric L. Einstein<br><br>Member of Trask Radio LLC<br><br>Manager of Advanced Aerospace LLC d/b/a Balcon Salon | Mr. Einstein graduated *magna cum laude* from the Wharton School, where he concentrated in finance and information management. He began his professional career in the banking industry, spending five years in Monaco, eventually serving as the right hand to banking legend Edmond Safra, until his passing. After returning to New York, Mr. Einstein founded several small businesses prior to entering the nightlife industry.<br><br>Within the Debtors' operations, Mr. Einstein builds and maintains infrastructure, physical systems, operating procedures, and information systems as well as inventory management, purchasing, and bookkeeping. |
| Justin B. Buchanan<br><br>Member of Trask Radio LLC<br><br>Manager of Advanced Aerospace LLC d/b/a Balcon Salon | Mr. Buchanan earned a Bachelor of Science in business administration and management from East Carolina University. While completing his studies, he began his career in hospitality as a Manager and Corporate Trainer for Ruby Tuesday, where he was responsible for training and assisting in store openings throughout North Carolina and Tennessee.<br><br>In the summer of 2006, Mr. Buchanan served as General Manager of Cherry's on the Bay and Sunsets on the Bay in Cherry Grove, New York, overseeing operations for two nightclubs, a restaurant, and a Starbucks franchise. Later that year, he transitioned to a hands-on role as a bartender, which ultimately led to his long-term career in New York's nightlife industry.<br><br>Within the Debtors' operations, Mr. Buchanan focuses on all "front of house" matters, including staffing, scheduling, and entertainment and event booking. |