MCGRAIL & BENSINGER LLP
888-C 8th Avenue #107
New York, New York 10019
(201) 931-6910
Ilana Volkov
David C. McGrail
Cynthia L. Botello
ivolkov@mcgrailbensinger.com
dmcgrail@mcgrailbensinger.com
cbotello@mcgrailbensinger.com

*Counsel to Trask Radio LLC and
Advanced Aerospace LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRASK RADIO LLC, et al.,[1] | ) | Case No.: 25-12431 (DSJ) |
| | ) | |
| Debtors in Possession.) | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' COMBINED FIRST AMENDED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION

Trask Radio LLC ("Trask") and Advanced Aerospace LLC d/b/a Balcon Salon ("Balcon Salon"), the within debtors and debtors in possession (collectively, the "Debtors") hereby propose this combined first amended disclosure statement (the "Disclosure Statement") and liquidating plan of reorganization (the "Plan") under chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. This combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtors' history, businesses, properties, the Chapter 11 Cases, risk factors, summary and analysis of the Plan, and certain other related matters.

**THE COURT HAS SCHEDULED A HEARING ON THE COMBINED DISCLOSURE STATEMENT AND PLAN FOR MARCH 4, 2026, AT 10:00 A.M.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Trask Radio LLC (1584) and Advanced Aerospace LLC (6704). The lead Debtor's principal place of business is 674 9th Avenue, New York, NY 10036.

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR (II) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES. THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY. NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN WHAT IS CONTAINED HEREININ. NO REPRESENTATIONS CONCERNING THE DEBTORS, OR THE VALUE OF THEIR PROPERTY, HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3016(b), AND PROCEDURAL GUIDELINES FOR COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN, COMBINED HEARINGS ON APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF CHAPTER 11 PLAN, AND CONDITIONAL APPROVAL OF DISCLOSURE STATEMENT, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SEC NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

### ARTICLE I
### SUMMARY

This Plan proposes to satisfy the claims of creditors, in full, by: (i) transferring the Debtors' collective interests in the real and personal property located at 674 9th Avenue, New York, New York to creditors holding allowed secured claims free and clear of liens, claims and encumbrances, and (ii) paying creditors holding allowed general unsecured claims in cash on the later of the Effective Date and when their claims become allowed.  The Plan provides for one class of priority claims, two classes of secured claims, one class of unsecured claims, and one class of equity interest holders.  All classes of claims and interest holders are unimpaired and, therefore, deemed to have voted to accept the plan.  This Plan also provides for the payment of administrative and priority claims, in full, on the later of (i) the Effective Date or (ii) on or before 10 days after the date such claim becomes allowed, or upon such other terms as the holder of the claim and the Debtors may agree.

All creditors and interest holders should refer to Articles III through IV of this Plan for information regarding the precise classification and treatment of their claims or interests.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and interest holders is being transmitted with this Plan.  **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### DEFINITIONS

**2.1.    Definitions.**

The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

(a)    "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 Cases under Section 507(a)(2) of the Bankruptcy Code and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, the actual and necessary expenses of preserving the Debtors' estates, any actual and necessary expenses incurred following the Petition Date, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtors' estates under Chapter 123, Title 28, United States Code.

(b)    "Allowed" or "Allowed Claim" means any Claim or Interest against the Debtors that is scheduled by or on behalf of the Debtors as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Bankruptcy Court and, in either case, a Claim (a) as to which no objection has been interposed within thirty (30) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Bankruptcy Court.

(c)   "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York presiding over the Debtors' Chapter 11 Cases.

(d)   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Filing Date and as amended after the Filing Date and during the Debtors' Chapter 11 Cases.

(e)   "Bar Date" means the last dates set by the Bankruptcy Court to file a Claim against the Debtors.

(f)   "Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other legal holiday.

(g)   "Cash" means on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

(h)   "Cause of Action" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suit damages, judgments, claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise.

(i)   "Chapter 11 Cases" means the bankruptcy cases of the Debtors.

(j)   "Claim" means any right to payment from the Debtors arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date of this Plan, and based upon, concerning, relating to, or in any manner arising from, in whole or in part, the Debtors and/or the Debtor's operations, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. FOR THE AVOIDANCE OF DOUBT, "CLAIM" SHALL SPECIFICALLY AND EXPRESSLY INCLUDE ALL CLAIMS UNDER FEDERAL, STATE AND/OR LOCAL LAW OR REGULATION.

(k)   "Class" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

(l)   "Confirmation Date" means the date on which the Court enters the Confirmation Order.

(m)     "Confirmation Order" means an order of the Bankruptcy Court confirming the Plan.

(n)     "Creditor" means the Holder of a Claim against the Debtors.

(o)     "Disputed Claim" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim, or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

(p)     "Debtors' Professionals" means such attorneys, accountants and/or other professionals employed by the Debtors in connection with these Chapter 11 cases.

(q)     "Disbursing Agent" means the Reorganized Debtors.

(r)     "Effective Date" means the first business day following the date that is fourteen (14) days after the entry of the Confirmation Order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

(s)     "Equity Security" has the meaning set forth in Section 101(16) of the Bankruptcy Code.

(t)     "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

(u)     "Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(v)     "Final Order" means an order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

(w)     "General Unsecured Claim" means any Claim that is not an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, or a Priority Tax Claim.

(x)     "Governmental Unit" shall have the meaning ascribed to it in Section 101 (27) of the Bankruptcy Code.

(y)     "Intercompany Claims" means any Claims held by one Debtor against the other Debtor, whether existing as of, or arising after, the Petition Date (including stemming from the

rejection of any Unexpired Leases).

(z)　"Interest" means any Equity Security in any Debtor.

(aa)　"Lien" means a lien as defined in Section 101(37) of the Bankruptcy Code.

(bb)　"Non-Debtor Affiliates" means Tito Rocks LLC, Physical Onion LLC, Pieces Bar LLC, Rainbow Starship LLC, and TR Payments, LLC ("TR").

(cc)　"Personal Property" means the personal property owned by Trask or Balcon Salon, including leasehold improvements, located at the Real Property in which Newtek and the SBA hold a security interest.

(dd)　"Petition Date" means October 31, 2025, the date on which the voluntary petitions commencing these Chapter 11 cases were filed.

(ee)　"Priority Non-Tax Claim" means any Claim entitled to priority in payment under Section 507(a)(4) and (a)(5) of the Bankruptcy Code.

(ff)　"Priority Tax Claim" means any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

(gg)　"Pro Rata" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all claims in such class.

(hh)　"Professional" means any professionals employed by the Debtors under section 327 of the Bankruptcy Code.

(ii)　"Professional Fee Claim" means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by the Bankruptcy

(jj)　"Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Bar Date.

(kk)　"Real Property" means the real property owned by Trask and located at 674 9th Avenue, New York, New York, designated with a legal address of block 1037, lot 63 on the New York City tax map.

(ll)　"Reorganized Debtors" means the Debtors in their post-Effective Date states.

(mm)　"Secured" means when referring to a Claim: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount

subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

(nn)    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(oo)    "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

## ARTICLE III
## FACTUAL BACKGROUND OF BUSINESS, INDEBTEDNESS AND REASONS FOR COMMENCEMENT OF CHAPTER 11 CASES

3.1    The Debtors' Business.  The Debtors are New York limited liability companies and, through, Balcon Salon, operate a bar that is a pillar of the Hell's Kitchen LGBT community. Specifically, Balcon Salon operates a bar at the Real Property, which it leases from Trask, the fee owner.  In 2024, Balcon Salon generated revenue from operations in the amount of $1,455,734.00

3.2    Ownership.  Each Debtor is owned, directly or indirectly, 51% by Eric L. Einstein and 49% by Justin Buchanan.

3.4    Secured Debt of Newtek.  On March 23, 2023, the Debtors entered into a Loan Agreement (the "Loan Agreement") with a predecessor to Newtek, pursuant to which Newtek lent the Debtors the total original principal amount of $7,152,000.00 (the "Newtek Loan").  The Newtek Loan was intended to be an interim loan pending the Debtors' procurement of permanent financing through the SBA 504 Program (as defined below). Trask granted Newtek a first priority mortgage on the Hell's Kitchen Property to secure repayment of the Newtek Loan.  As additional security for the Newtek Loan, the Debtors granted Newtek a security interest in all of Trask's right, title and interest in the Personal Property. Additionally, repayment of the Newtek Loan is guaranteed by the Non-Debtor Affiliates other than TR, and Messrs. Einstein and Buchanan. Newtek claims in the Foreclosure Action (as defined below) that, as of July 16, 2025, it is owed $7,132,915.46 under the Newtek Loan.

3.5    Secured Debt of the SBA.  In July 2024, the Debtors also obtained a loan from Business Initiative Corporation of New York ("BIC") in the original principal amount of $5,000,000.00 (the "BIC Loan"), the proceeds of which were used to pay off the Newtek Bridge Loan (as defined below). Trask granted BIC a second priority mortgage on the Hell's Kitchen Property and the Debtors granted BIC a second priority security interest in their personal property to secure repayment of the BIC Loan; additionally, the BIC Loan is guaranteed by Tito Rocks LLC and Messrs. Einstein and Buchanan.  As of July 16, 2025, BIC was owed approximately $4,945,000.00.  The BIC Loan and all rights in the BIC Loan documents were assigned to the SBA.

3.6    Trade Debt.  The Debtors' trade debt, on a consolidated basis, totals approximately $10,000.00.

3.7.    Events Leading to Chapter 11 Filing.  In May 2021, Balcon Salon leased the Real Property from Premier 674 Ninth, LLC ("Premier") for 15 years.  In March 2022, shortly after taking possession of the Real Property as leaseholder and commencing demolition work, Balcon Salon discovered significant structural damage to property that required immediate and costly renovation. When Balcon Salon realized the buildout of the Real Property would be much more expensive than anticipated, it understood that borrowing funds for the construction would be necessary.

Balcon Salon approached its then bank, Spring Bank N.A. ("Spring Bank"), for a construction loan. Spring Bank suggested the idea of buying the building and, thus also funding construction at a lower interest rate, under the U.S. Small Business Administration's ("SBA") 504 loan program (the "SBA 504 Program") as opposed to pursuing a construction loan under the SBA 7a program.  The Debtors understood that the SBA 504 Program is designed to provide long-term, fixed rate financing to promote business growth and job creation.

The Debtors' evaluation of their financing needs and costs under the SBA 504 Program led them to agree to purchase the Real Property from Premier for $7 million. From June to July of 2022, the Debtors worked with BIC via Spring Bank to obtain approval for the project under the SBA 504 Program, under which the lending limit was $5 million; the Debtors understood that the remaining $7 million loan would be financed by Spring Bank.  The Debtors subsequently learned that the required loan amount of $7 million was above Spring Bank's lending limit and, therefore, Spring Bank would have to syndicate the loan. The Debtors were assured this would not be a problem as syndication was not atypical for Spring Bank.

Based on these lending commitments, in August 2022, Trask entered into an agreement to purchase the Real Property from Premier for $7 million.  Unfortunately, the next month, Spring Bank's partners in the syndicate withdrew and Spring Bank backed out from the loan altogether.

From September 2022 to January 2023, with the SBA 504 Program approval in hand, the Debtors contacted dozens of participating lenders to ascertain whether they would be willing to fund the acquisition of the Real Property.  In March 2023, the Debtors finalized the framework of the requisite financing with Newtek.  Newtek provided the Debtors with two "bridge" loans which allowed Trask to close on the purchase of the Real Property and enabled Balcon Salon to have funds for construction: one loan was for $7,152,000 (defined above as the Newtek Loan) and the other loan was for approximately $4,800,000 (the "Newtek Bridge Loan").

Both loans were interest-only and bore interest at prime+6.5% (for a total of 11.5%), with daily floating rates.  The Debtors understood that the bridge period at these high rates was allowed to last only nine months under the SBA 504 Program.

Due to the poor performance of both the general contractor and project manager, the construction project experienced numerous delays.  It was not until October 2023 that Balcon Salon finally opened for business.

8

In December 2023, the Debtors needed to extend the bridge period for both loans.  Newtek agreed, but required the Debtors to pay for the extension; this was an unanticipated cost of the project and further drained the already scarce resources. Moreover, the Debtors were required to pay the higher interest rate under the interim Newtek Loan for an extra four months.

In April 2024, Newtek finally accepted that the risk from construction was eliminated and agreed to fix the Newtek Loan at its permanent, lower interest rate of 7.84%; under the permanent loan, the Debtors were required to make principal payments in addition to interest.

In May 2024, Trask finally received its final Certificate of Occupancy from the New York City Department of Buildings; this was a condition precedent to BIC agreeing to consummate the BIC Loan.  Accordingly, in July 2024, the Debtors and BIC closed on the BIC Loan, the proceeds of which were used to satisfy the Newtek Bridge Loan. Until that time, the Debtors were paying 11.5% interest on the Newtek Bridge Loan instead of the five percent (5%) rate under the BIC Loan.

During this period, Mr. Einstein advanced funds to the Debtors to enable them to continue making payments on both the construction project and their loan servicing obligations. The additional outlays resulting from the increased construction costs and unanticipated loan servicing totaled approximately $3,000,000.00.  When the permanent loans—consisting of what are now the Newtek Loan and BIC Loan—replaced the interim loans in 2024, the payments were significantly higher than originally forecast due to the prevailing interest rate.

The Debtors' difficulties were further exacerbated by a general decline in business beginning in 2022, driven by a decrease in alcohol consumption.  This downturn resulted in Balcon Salon's receipts being substantially lower than projected following its opening in October 2023.

To alleviate the Debtors' liquidity challenges, Mr. Einstein made loans to the Debtors and Non-Debtor Affiliates (other than TR) in the total approximate principal amount of over $2 million in December 2024.  Additionally, neither he nor Mr. Buchanan received compensation from the Debtors from July 2024 until March of 2025.

In December 2024, it became clear that the Debtors would be unable to continue servicing their debt to Newtek and BIC.  Therefore, on the day before making their final loan payment for December 2024, the Debtors and Non-Debtor Affiliates (other than TR) approached Newtek to initiate settlement discussions regarding their liquidity challenges.  Although the Debtors made several good faith overtures and proposals, they were flatly rejected without any counter-offer from Newtek.

On July 16, 2025, Newtek commenced a foreclosure action in New York Supreme Court titled *Newtek Business Services Holdco 6, Inc. v. Trask Radio, LLC; Advanced Aerospace LLC d/b/a Balcon Salon; Tito Rocks LLC; Physical Onion LLC d/b/a Hardware Bar; Pieces Bar LLC; Eric L. Einstein; Justin Buchanan; U.S. Small Business Administration; and "John Doe #1" through "John Doe #12,"* Index No. 850306/2025 (the "Foreclosure Action"). On October 8, 2025, Newtek filed a motion to appoint a temporary receiver in the Foreclosure Action (the

"Receivership Motion").  The hearing on the Receivership Motion was scheduled for November 7, 2025.

Since the commencement of the Foreclosure Action, the Debtors and Non-Debtor Affiliates engaged in further extensive discussions with Newtek's counsel in an effort to resolve the alleged payment default, but those efforts were unsuccessful as each settlement proposal made was rejected by Newtek.  Through counsel, the Debtors even contacted Newtek the day before the commencement of these cases to ascertain whether a forbearance arrangement could be agreed upon to avoid the filings; however, Newtek declined to engage in such discussions.

The Debtors commenced the Chapter 11 Cases because they do not have the financial wherewithal to fight the Foreclosure Action, including the Receivership Motion, and to preserve the value of their assets for the benefit of all creditors because they believe the value is dramatically higher than the appraisal commissioned by Newtek dated May 7, 2025 in the amount of $8,220,000.00.  Indeed, the Debtors believe the value of Newtek and the SBA's collateral (i.e., the Real Property and the Personal Property) to be $14,285,493, which represents the Debtors' costs to purchase and improve the Real Property and Personal Property, less accumulated depreciation.

## ARTICLE IV
## THE CHAPTER 11 CASES

4.1.    <u>Generally</u>.  On October 31, 2025, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of that date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors and debtors in possession. By order entered on November 4, 2025 (D.I. 16), the Chapter 11 Cases are jointly administered for procedural purposes only. No trustee, examiner or unsecured creditors' committee has been appointed in the Chapter 11 Cases.

4.2.    <u>"First Day" Motions</u>. On the Petition Date, the Debtors filed a number of "first-day" motions designed to ease their transition into chapter 11, maximize the value of the Debtors' assets and minimize the effects of the commencement of these Chapter 11 Cases. On November 4, 2025, the Bankruptcy Court entered orders providing various first-day relief, as follows:

> *Authorizing the Debtors to pay pre-petition compensation to employees and contractors and related relief;*

> *Authorizing the Debtors to pay pre-petition sales taxes;* and

> *Prohibiting utilities from altering, refusing, or discontinuing services and related matters.*

4.3.　　341(a) Meeting of Creditors and Bar Date Motion.  The United States Trustee has scheduled the 341(a) meeting of creditors for December 30, 2025, at 2:00 p.m.  Pursuant to an order entered by the Bankruptcy Court on December 11, 2025 (D.I. 31), the Bankruptcy Court fixed January 20, 2026 (prevailing Eastern Time) as the "general" Bar Date and April 29, 2026 (prevailing Eastern Time) as the "Governmental Unit" Bar Date.

4.4.　　Retention of Professionals.  On December 9, 2025, the Bankruptcy Court authorized the Debtors to retain McGrail & Bensinger LLP as their counsel and CFGI, LLC as their financial advisors effective to the Petition Date.

4.5.　　Combined Hearing on the Disclosure Statement and Plan.  On January 14, 2026, the Court entered an Order granting the Debtors' motion to fix a combined hearing on the Disclosure Statement and Plan.  **Such hearing is scheduled to take place on March 4, 2026, at 10:00 a.m.**

**ARTICLE V**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

The Plan classifies Claims and Interests against the Debtors consistent with the applicable provisions of the Bankruptcy Code.  The categories listed below classify Claims and Interests against the Debtors for all purposes, including voting, confirmation and distribution, pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

5.1.　　Class 1.  The Allowed Non-Tax Priority Claims.

5.2.　　Class 2.  The Allowed Secured Claim of Newtek Business Services Holdco 6, Inc. ("Newtek").

5.3.　　Class 3.  The Allowed Secured Claim of the United States Small Business Administration, as assignee of Business Initiative Corporation of New York ("SBA").

5.4.　　Class 4.   The Allowed General Unsecured Claims.

5.5.　　Class 5.   Intercompany Claims.

5.6.　　Class 6.   Interests of the Debtors.

**ARTICLE VI**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**PRIORITY TAX CLAIMS, AND U.S. TRUSTEES FEES**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and U.S. Trustee Fees are not classified in classes.

6.1.    Professional Fees. All Professionals seeking an award of compensation shall file their respective final applications for services rendered through the Effective Date no later than thirty (30) days after the Effective Date. After notice and a hearing, the allowed Professional Fee Claims, net of retainers, shall be paid from Cash on hand and, to the extent necessary, by the Non-Debtor affiliates.

6.2.    Administrative Expense Claims Other Than Professional Fees.   Administrative Expense Claims other than Professional Fees consist of the actual, necessary costs and expenses of preserving the Debtors' estates other than Professional Fees.  All Administrative Expense Claims must be filed and served no later than thirty (30) days following the Effective Date. Each Holder of an Allowed Administrative Expense Claim will be paid, in full, in Cash upon the later of (i) the Effective Date or (ii) on or before 10 days after the date such claim becomes Allowed, or upon such other terms as the Holder of the Claim and the Debtors may agree.

6.3.    Priority Tax Claims.   Each Holder of an Allowed Priority Tax Claim, if any, will be paid in full, in cash, upon the later of (i) the Effective Date or (ii) on or before 10 days after the date such claim is Allowed under the Bankruptcy Code, or upon such other terms as the Holder of the Claim and the Debtors may agree. The Debtors are not aware of any Allowed Priority Tax Claims.

6.4.    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) and any applicable interest thereon will accrue and be timely paid until the cases are closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees and any applicable interest thereon owed on or before the Effective Date will be paid on the Effective Date.

**ARTICLE VII**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN; VOTING**

7.1.    Claims and Interests shall be treated as follows under this Plan:

| Class | Impairment/Voting Rights | Treatment |
|---|---|---|
| Class 1 – Non-Tax Priority Claims | Unimpaired/Presumed to Accept | Each Holder of a class 1 priority claim, if any, will be paid in full, in cash, upon the later of (i) the Effective Date or (ii) on or before 10 days after the date such claim becomes Allowed, or on such other terms as the Holder of the Allowed Non-Tax Priority Claim and the Debtors agree.<br><br>The Debtors are not aware of any Allowed Non-Tax Priority Claims. |
| Class 2 – Secured Claim of Newtek | Unimpaired/Presumed to Accept | On the Effective Date, the Debtors will transfer their collective interests in the Real Property and the Personal Property to Newtek free and clear of Liens, claims and encumbrances in full and final satisfaction, settlement, and release of, and in exchange for, Newtek's Allowed Secured Claim. |
| Class 3 – Allowed Secured Claim of the SBA | Unimpaired/Presumed to Accept | On the Effective Date, the Debtors will transfer their collective interests in the Real Property and the Personal Property to the SBA free and clear of Liens, claims and encumbrances, to be a joint owner with Newtek in their respective Pro Rata shares, in full and final satisfaction, settlement, and release of, and in exchange for, the SBA's Allowed Secured Claim. |

| Class 4 – Allowed General Unsecured Claims | Unimpaired/Presumed to Accept | Each Holder of an Allowed Class 4 Claim shall be paid in full, in Cash, on the later of (i) the Effective Date and (ii) thirty (30) days after such Claim becomes Allowed, together with all interest accrued thereon from the Petition Date through the payment date at the prevailing prime rate on the Effective Date. |
| --- | --- | --- |
| Class 5 – Intercompany Claims | Impaired/Presumed to Reject | On the Effective Date, each Intercompany Claim shall be extinguished, cancelled, and released without any distribution on account of such Intercompany Claim. |
| Class 6 – Interest Holders | Unimpaired/Presumed to Accept | Interest Holders will receive no distribution, but will retain their Interest under the Plan. |

7.2.     Elimination of Vacant Classes. Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than $0.00 as of the date of the Confirmation Date shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

7.3.     Controversy Concerning Impairment. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE VIII**
**ALLOWANCE OF CLAIMS**

8.1.     Allowance of Claims Generally.  Except with respect to any proofs of claim to which the Debtors have filed an objection on or before the Effective Date (collectively, the "Disputed Claims"), each creditor's claim shall be allowed in an amount equal to the *greater* of (i) the amount set forth in the Debtors' Schedules of Assets and Liabilities, filed on October 31, 2025 (*In re Trask Radio LLC et al.*, No. 25-12431-dsj, D.I. 3; *In re Advanced Aerospace LLC*, No. 25-12433-dsj, D.I. #3), irrespective of whether such amount is listed as contingent, unliquidated, or disputed thereon, and (ii) the amount set forth on such creditor's proof of claim, less any amounts paid to such creditor on account of such claim as of the Effective Date.

14

## ARTICLE IX
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1.    Rejection of Executory Contracts and Unexpired Leases. On the Effective Date, each Executory Contract or Unexpired Lease shall be deemed rejected automatically by the applicable Debtor. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the rejections of any such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

9.2.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases for any Claims which would be subject to the Claims Bar Date pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. Any such Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not filed within such time shall be barred from asserting such Claims against the Debtors and/or receiving distributions on account of such Claims in these Chapter 11 Cases.  All Allowed Claims arising from the rejection of the Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article 7.1 and may be objected to in accordance with the provisions of Article XI of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE X
## MEANS FOR IMPLEMENTATION OF THE PLAN

10.1.    Transfer of Real Property.  On the Effective Date, the Debtors will transfer their aggregate interest in the Real Property and Personal Property to Newtek and the SBA free and clear of Liens, claims and encumbrances on account of their respective Allowed Secured Claims. For purposes of calculating the Pro Rata interest of Newtek and the SBA in the Real Property and Personal Property, the ascribed value thereof shall be $14,285,493, which represents the Debtors' costs to purchase and improve the Real Property and Personal Property, less accumulated depreciation.

10.2.    Cessation of Business Operations.  Subject to the occurrence and no later than the Effective Date, Balcon Salon will cease any and all business operations.

10.3.    Release of Liens. On the Effective Date and concurrently with the transfer of the Real Property and Personal Property as set forth herein, all mortgages, Liens, pledges, or other security interests against any property of the Debtors' Estates that previously have not been released shall be fully released, settled, and compromised, and the Holder of such mortgages, Liens, pledges, or other security interest against any property of the Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases.

10.4.   <u>Payments from Operations.</u>  Any and all Allowed Administrative Expense Claims, Allowed Professional Fee Claims (less retainers), Allowed Priority Tax Claims, United States Trustee fees and any applicable interest thereon, and Class 1 and Class 4 Claims shall be paid from cash on hand accumulated from the Debtors' operations and, to the extent of any deficiency therein, by the Non-Debtor Affiliates.

10.5.   <u>Corporate Existence of the Reorganized Debtors</u>. Each Reorganized Debtor shall continue to exist on and after the Effective Date as a separate legal entity with all the powers available to such entity pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date.  In addition, each Reorganized Debtor shall continue to be managed by Eric L. Einstein. Notwithstanding the foregoing, the Reorganized Debtors shall retain the authority to take all necessary actions to dissolve and withdraw any Reorganized Debtor from applicable states to the extent required or authorized by applicable law.

## ARTICLE XI
## <u>DISTRIBUTIONS</u>

11.1.   <u>Method of Payment.</u> Unless otherwise expressly agreed, in writing, payments to be made pursuant to the Plan shall be made at the times and in the amounts set forth in the Plan by either electronic funds wire transfer or check drawn on a domestic bank.

11.2.   <u>Disbursing Agent</u>. All Distributions and/or payments under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All Cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at a banking institution that is an authorized depository in the Southern District of New York. The Disbursing Agent shall not be compensated for services rendered under the Plan (excluding legal matters relating to the closing and objections to claims). The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Effective Date and ending on the date that all disbursements contemplated by the Plan have been distributed. The Disbursing Agent shall not be deemed to be an officer, fiduciary or agent of the Debtors.

11.3.   <u>Rights and Powers of Disbursing Agent</u>. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) object to claims and make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof

16

11.4.   Unclaimed Distributions.   Any unclaimed distributions (including distributions made by checks which fail to be negotiated) shall be retained by the Debtors in trust for the beneficial holders of allowed claims entitled thereto for a period of sixty (60) days after the distribution date.  Any distribution remaining unclaimed sixty (60) days after the distribution date shall be canceled (by a stop payment order or otherwise), the claim relating to such distribution shall be deemed forfeited and expunged, and the Holder of such claim shall receive no further distributions under this Plan.

11.5.   Disputed Claims.   No distributions shall be made with respect to any Disputed Claim. Instead, the Debtors shall deposit into one or more segregated accounts (the "Disputed Claims Reserves," each being a "Disputed Claims Reserve") funds equal to 100% of the Cash that would be distributed under the Plan to the Holder of a Disputed Claim that would be an Allowed Claim, but for the dispute. In determining the amount of the Cash to be distributed under the Plan to the Holders of Allowed Claims, the calculation of the amount to be distributed to each Holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts. The Debtors or any other party in interest shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating the amount of a Disputed Claim, and limiting the amount of Cash that must be so deposited.

11.6.   Prosecution of Claims' Objections. The Debtors shall have the right to file, settle, compromise, withdraw or litigate, to final order or judgment, objections to Disputed Claims. Objections to Claims, other than Administrative Expense Claims, shall be filed and served on or before the Claims Objection Deadline.

11.7.   Claims' Objection Deadline. The Debtors may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of: (i) sixty (60) days following the Effective Date; or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

11.8.   Distribution After Allowance. Within ten (10) days after entry of a Final Order finding all (or part of) a Disputed Claim to be an Allowed Claim (or as soon thereafter as practicable), the Disbursing Agent shall distribute from the funds placed in the Disputed Claims Reserve with respect to such Claim, all Cash, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

11.9.   Delivery of Distributions. Distributions to Holders of Allowed Claims shall be made: (i) at the address set forth on the respective Proof(s) of Claim or other request(s) for payment filed by the Holder of such Allowed Claim; (ii) at the addresses set forth in any written notices of address change delivered to the Debtors; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Debtors have not received a written notice of change of address. If the distribution to the Holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the Holder of the

Allowed Claim or Allowed Interest. Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution"). A distribution becomes an Unclaimed Distribution if three (3) months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six (6) months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the Holder of the claim to which such distribution relates containing a valid address for such Holder. If such a notice is provided, then, after receipt of such additional information as the Debtors may require confirming the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Creditor at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

## ARTICLE XII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

12.1.    Conditions to Effective Date. The Plan will not become effective, and the Effective Date will not occur, unless and until: (a) the Confirmation Order has become a Final Order; and (b) the transfer of the Real Property and Personal Property to Newtek and the SBA has occurred.

12.2.    Execution of Documents. The Debtors shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan. Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtors shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation and if the Debtors refuse to execute or deliver any such documents or notices, Newtek and the SBA, as the case may be, shall be authorized to execute such documents and/or notices on the Debtors' behalf, and the Confirmation Order shall expressly so provide.

## ARTICLE XIII
## RETENTION OF JURISDICTION

13.1.    Following the Effective Date, the Bankruptcy Court shall retain post-confirmation jurisdiction to hear and determine the following matters:

(a)      any request to modify the Plan pursuant to Section 1127 of the Bankruptcy Code;

(b)      the applications for allowance of final compensation and reimbursement of expenses of Professionals;

(c)     all controversies, suits and disputes, if any, as may arise between or among the Holders of any Class of Claims or Interests and the Debtors including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(d)     any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date;

(e)     any and all rights or Causes of Action which may exist on behalf of the estates, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate;

(f)     request to enter a final decree closing the Chapter 11 Cases; and otherwise to enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, and the distributions hereunder.

## ARTICLE XIV
## INJUNCTION AND EXCULPATION

14.1.   <u>Injunction.</u>  Except as otherwise may be provided herein or in the Confirmation Order, upon the occurrence of the Effective Date, the rights afforded and the payments and distributions to be made under this Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, and release of, any and all existing debts, claims, and interests of any kind, nature, or description whatsoever against the Debtors' assets or other property, and shall effect a full and complete release, and termination of all Liens, security interests, or other claims, interests, or encumbrances upon all of the Debtors' assets and property. No Creditor or interest Holder of the Debtors nor any other entity or person may receive any distribution from the estates or seek recourse against, the estates or any of the assets that are to be distributed under the terms of the Plan, except for those distributions expressly provided for under the Plan.  All entities and persons are precluded from asserting against any property that is to be distributed under the terms of the Plan, any claims, interests, obligations, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date, other than as expressly provided for in the Plan or the Confirmation Order, whether or not (a) a proof of claim or proof of interest based upon such debt or interest (as applicable) is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a claim or interest based upon such debt or interest (as applicable) is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a claim or interest based upon such debt or interest (as applicable) has accepted the Plan or is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.  Except as otherwise provided in the Plan or the Confirmation Order with respect to a claim that is expressly reinstated under the terms and conditions of the Plan, all Holders of claims and interests arising before the Effective Date permanently shall be barred and enjoined from asserting against the estates or the assets, any of the following actions on account of such claim or interest: (a) commencing or continuing in any manner any action or other proceeding on account of such claim or interest against property to be distributed under the terms of the Plan, other than to enforce any right to distribution with respect to such property under

the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any of the property to be distributed under the terms of the Plan, other than as permitted under subclause (a) above; (c) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the terms of the Plan; and (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

14.2.   <u>Limitation as to Liability</u>. From the Petition Date to the Effective Date, neither the Debtors nor their members, managers or Professionals shall have or incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, confirmation, consummation, or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Chapter 11 Cases or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, or *ultra vires* actions.

14.3.   <u>Binding Effect</u>. Subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of the Plan will bind every Holder of a claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under the Plan and whether such Holder accepted the Plan.

**ARTICLE XV**
**<u>GENERAL PROVISIONS</u>**

15.1.   <u>Headings</u>. The headings in the Plan are for reference purposes only.

15.2.   <u>Rules of Interpretation</u>.  For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document, schedule, or exhibit, whether or not filed, having been filed or to be filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (f) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the

Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (h) any effectuating provisions may be interpreted by the Debtors, the Reorganized Debtors, or the Disbursing Agent in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (i) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (j) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

15.3.   <u>Authority to Act.</u>   After the Confirmation Date, the Debtors are authorized to perform those responsibilities, duties, and obligations set forth herein, including, as to acting as a Disbursing Agent, making distributions as provided under the Plan.  To the extent the manner of performance is not specified, the Debtors will have the discretion to carry out and perform all other obligations or duties imposed on them by, or actions contemplated or authorized by, the Plan.

15.4.   <u>Section 1146 Exemption</u>.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan (including the transfer of the Real Property and Personal Property interests to Newtek and the SBA), including the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.5.   <u>Certain Tax Considerations</u>. There may be material income tax considerations, risks and uncertainties to Creditors and Interest Holders associated with the Plan. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX

ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

15.6.    Causes of Action.  Any and all causes of action, claims, actions, third-party claims, counterclaims and crossclaims (including, without limitation, an avoidance, recovery, or subordination actions against insiders and/or any other persons or entities under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code in favor of the Debtors and/or their estates existing on the Effective Date against any entity based in law or equity, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, shall (i) remain assets of the estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, (ii) be transferred to and vest in the Reorganized Debtors on the Effective Date, and (iii) inure to the benefit of the reorganized Debtors and not any of their creditors.

15.7.    Post-Effective Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals, if any. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors or the Disbursing Agent, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

15.8.    Orders in Aid of Consummation. Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation and/or consummation of the Plan directing the implementation of matters or actions required by the Plan.

15.9.    Compliance with Tax Requirements. In connection with the Plan, the Debtors/Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to applicable withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extend provided under Section 1146 of the Bankruptcy Code.

15.10. Due Authorization by Creditors.  Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is a lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights released, or modified by the Plan or obligations undertaken by such Creditor under the Plan.

22

15.11.   Amendments and Modifications. The Plan may be altered, amended or modified by the Debtors at any time before substantial consummation of the Plan, as provided in Sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

15.12.   Request for Relief Under Section 1129(b). If necessary, Debtors may request confirmation under Section 1129(b) of the Bankruptcy Code.

15.13.   Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

15.14.   Computation of Time. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

15.15.   Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

15.16.   Filing of Additional Documents. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.17.   Quarterly Fees. All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor until the closing of the Chapter 11 Cases under Section 350(a) of the Bankruptcy Code.

15.18.   Post-Confirmation Reports. The Debtor shall file quarterly status reports until the Chapter 11 Case is closed.

15.19.   Revocation or Withdrawal of the Plan.  The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing.  If the Debtors so revoke or withdraw the Plan, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtors or any other person, or (b) prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

15.20.   No Admissions.   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any entity or person with respect to any matter set forth herein.

*[Remainder of page intentionally left blank]*

Dated:  January 14, 2026

TRASK RADIO LLC

By:      */s/ Eric L. Einstein*
          Eric L. Einstein
          Member

Dated:  January 14, 2026

ADVANCED AEROSPACE LLC

By:      */s/ Eric L. Einstein*
          Eric L. Einstein
          Member

Dated:  January 14, 2026

MCGRAIL & BENSINGER LLP
Counsel to the Debtors and Debtors in Possession

By:      */s/ Ilana Volkov*
          Ilana Volkov

WE HEREBY AGREE TO THE PROVISIONS HEREIN
RELATING TO PAYMENT OF CLAIMS IN THE EVENT
THE DEBTORS DO NOT HAVE SUFFICIENT FUNDS
TO PAY THOSE CLAIMS ON THE TERMS, AND AT THE
TIMES, SET FORTH HEREIN

TITO ROCKS LLC

By:      */s/ Eric L. Einstein*
          Eric L. Einstein
          Member

Dated: January 14, 2026

TR PAYMENTS, LLC

By:      */s/ Eric L. Einstein*
          Eric L. Einstein
          Member

Dated:  January 14, 2026