Newtek\Trask Radio\Trask Radio Bankruptcy\Objection to Confirmation - Declaration

**CHARTWELL LAW**
One Battery Park Plaza, Suite 701
New York, NY 10004-1445
Telephone: (212) 968-2300
Novica Petrovski (NY ID 4370151)
John J. Winter (*Pro Hac Vice*)
Telephone: (212) 968-2300
*(Attorneys for Small Business Lending, LLC as Servicer for Newtek Business Services Holdco 6, Inc.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(Manhattan)**

Hearing Date: 3-4-26, 10:00 a.m.
Objections Due: 2-20-26, 5:00 p.m.

| | |
|---|---|
| In re:<br>**TRASK RADIO LLC,**<br>Debtor. | Chapter 11<br>Case No. 25-12431-dsj |
| In re:<br>**ADVANCED AEROSPACE LLC,**<br>Debtor. | Case No. 25-12433-dsj<br>(Jointly Administered) |
| **SMALL BUSINESS LENDING, LLC as Servicer for NEWTEK BUSINESS SERVICES HOLDCO 6, INC.,**<br>Objector,<br>v.<br>**TRASK RADIO LLC, and ADVANCED AEROSPACE LLC,**<br>Movants. | Related to D.I. Nos. 44, 45 |

**OBJECTION TO CONFIRMATION OF DEBTORS' AMENDED JOINT CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION DATED JANUARY 14, 2026, FILED ON SMALL BUSINESS LENDING, LLC AS SERVICER FOR NEWTEK BUSINESS SERVICES HOLDCO 6, INC.**

TO: THE HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE:

ALL E-FILERS

**Small Business Lending, LLC as Servicer for Newtek Business Services Holdco 6,**

**Inc. ("Newtek")**, a secured creditor of the above-captioned debtor and party in interest herein, by and through its undersigned attorneys, Chartwell Law, hereby files the following Objection to Confirmation of Debtors' Joint Chapter 11 Liquidating Plan of Reorganization Dated December 11, 2025.

## I. PARTIES, JURISDICTION AND VENUE.

1. Objector is Small Business Lending, LLC as Servicer for Newtek Business Services Holdco 6, Inc., which maintains a place of business or other address for purposes of notices and service of papers located at 4800 T-Rex Avenue, Suite 120, Boca Raton, FL 33431.

2. The above-captioned debtor, Trask Radio LLC ("Trask"), is a New York limited liability company, with an address for purposes of receipt of notices and papers located at 7 Doane Avenue, Pt. Jefferson Station, NY 11776.

3. The above-captioned debtor, Advanced Aerospace LLC ("Advanced"), is a New York limited liability company, with an address for purposes of receipt of notices and papers located at 7 Doane Avenue, Pt. Jefferson Station, NY 11776.

4. On October 31, 2025 (the "Trask Petition Date"), Trask filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the Southern District of New York, Manhattan Division, which was docketed at Case No. 25-12431-dsj (the "Trask Petition", Trask D.I. No. 1), resulting in the above-captioned case (the "Trask Bankruptcy Case").

5. On October 31, 2025 (the "Advanced Petition Date"). Advanced filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, also in the Southern District of New York, Manhattan Division, which was docketed at Case No. 25-12433-dsj (the "Advanced Petition", Advanced D.I. No. 1), resulting in the above-captioned case (the "Advanced

Bankruptcy Case”).

6. By Order entered November 4, 2025, the Trask Bankruptcy Case and Advanced Bankruptcy Case have been administratively consolidated (Trask D.I. No. 16).

7. On January 14, 2026, the Debtors filed a Combined First Amended Disclosure Statement and Joint Plan of Reorganization (the “Plan”, Trask D.I. No. 44).

8. The Court has jurisdiction over the Plan and this Objection pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper in this district pursuant to 28 U.S.C. § 1409.

9. The Plan and this Objection involve “core proceedings” pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O). This Objection is brought pursuant to the applicable provisions of 11 U.S.C. §§ 105(a) 1129 (a), (b), and Federal Rule of Bankruptcy Procedure 9014.

## II. SUMMARY OF ARGUMENTS.

10. As set forth more fully below, the Plan fails to provide Newtek with the indubitable equivalent of its allowed claim, and improperly discharges third parties’ guarantees of the loan for which the Debtors are jointly and severally obligated. Further, the Plan cannot be confirmed without the consent of the U.S. Small Business Administration.

## III. BACKGROUND.

### A. Objector’s Loan.

11. As set forth in the supporting Declaration of Jeff Norman filed herewith (the “Norman Declaration”), on March 23, 2023, Trask Radio LLC (“Trask”) and Advanced Aerospace LLC (“Aerospace”, and together with Trask, collectively the “Borrowers”) executed and delivered to Newtek Bank, National Association (“Lender”) a Construction Loan Agreement for the project located at 674 9th Avenue, New York, NY 10036 (the “Loan Agreement”) whereby Lender agreed to consolidate Borrowers’ pre-existing debt in the principal sum of

$7,152,000.00 (the "Loan"). Norman Declaration, ¶ 3. A true and correct redacted copy of the Loan Agreement is attached to the Norman Declaration as Exhibit "A" and is incorporated herein by reference.

12. As evidence of its obligation to repay the Loan, on March 23, 2023, Borrowers executed and delivered to Lender a Consolidated Note, Amended, Restated, Promissory Note in the original principal amount of $7,152,000.00 (the "Note"). The Note provided that interest would accrue on the outstanding principal balance and regular monthly interest payments would be made beginning May 1, 2023 at the initial rate of 10.75% *per annum* for twelve (12) months, then beginning May 1, 2024 at the rate of 7.060 % *per annum* for 119 months, with one final balloon principal and interest payment of $6,208,431 due on April 1, 2034 (the "Maturity Date"). Norman Declaration, ¶ 4. A true and correct redacted copy of the Note is attached to the Norman Declaration as Exhibit "B" and is incorporated herein by reference.

13. As collateral security for the payment of the Loan, Trask executed, acknowledged, and delivered to Lender a consolidated mortgage in the amount of $7,152,000.00 encumbering certain real property located at 674 9th Avenue, New York, NY 10036 (the "Mortgaged Property"), which was duly recorded in the Office of the Clerk of New York County on April 3, 2023 under CRFN: 2023000081299 (the "Mortgage"). At the time of the recording of the Mortgage there was paid to the New York County Clerk the tax imposed on the Mortgage. Norman Declaration, ¶ 5. A true and correct redacted copy of the Mortgage is attached to the Norman Declaration as Exhibit "C" and is incorporated herein by reference.

14. The Note and Mortgage have been assigned by Lender to Newtek Business Services Holdco 6, Inc. by way of an executed allonge (the "Allonge"), and assignment of mortgage dated April 3, 2025 and recorded on April 21, 2025 under CRFN: 2025000107565 (the

"Assignment of Mortgage"). Norman Declaration, ¶ 6. True and correct redacted copies of the Allonge and Assignment of Mortgage are attached to the Norman Declaration as Exhibits "D" and "E", and are incorporated herein by reference.

15. As additional security for the Note Trask executed and delivered to Lender an Assignment of Rents dated March 23, 2023 whereby Trask Borrower granted Lender a security interest in all of Trask Borrower's right, title and interest in the Rents for the Mortgaged Premises (the "Assignment of Rents"). The Assignment of Rents has been assigned by Lender to Newtek Business Services Holdco 6, Inc. by assignment of assignment of leases and rents dated April 3, 2025, and recorded on April 21, 2025 under CRFN: 2025000107566 (the "Assignment of Assignment of Rents"). Norman Declaration, ¶ 7. True and correct redacted copies of the Assignment of Rents and Assignment of Assignment of Rents are attached to the Norman Declaration as Exhibits "F" and "G" and are incorporated herein by reference.

16. As additional security for the Note, Borrowers executed and delivered to Lender a Security Agreement dated March 23, 2023, whereby Borrowers granted Lender a security interest in all of its right, title and interest in substantially all of their personal property, then owned or thereafter acquired of every kind and description wherever located, and proceeds thereof, as set forth therein (the "Security Agreement"). Newtek perfected the security interests thus granted by filing UCC-1 Financing Statements at the State and County Level (collectively, the "Financing Statement"). Norman Declaration, ¶ 8. True and correct redacted copies of the Security Agreement and Financing Statements are attached to the Norman Declaration as Exhibits "H" and "I" and are incorporated herein by reference.

17. As further security for the Loan and Note, Eric L. Einstein ("Einstein"), Tito Rocks LLC ("Tito Rocks"), Justin Buchanan ("Buchanan"), Physical Onion LLC ("Physical

Onion"), Rainbow Starship LLC ("Rainbow Starship"), and Pieces Bar LLC ("Pieces Bar") (collectively the "Guarantors") executed and delivered to Lender a Commercial Guaranty (respectively, the "Einstein Guaranty", "Tito Rocks Guaranty", "Buchanan Guaranty", "Physical Onion Guaranty", "Rainbow Starship Guaranty", and "Pisces Bar Guaranty", and collectively, the "Guarantees"). Norman Declaration, ¶ 10. True and correct redacted copies of the Einstein Guaranty, Tito Rocks Guaranty, Buchanan Guaranty, Physical Onion Guaranty, Rainbow Starship Guaranty, and Pisces Bar Guaranty are attached to the Norman Declaration as Exhibits "J", "K", "L", "M", "N" and "O" and are incorporated herein by reference.

18. Borrowers and Guarantors have failed to comply with the terms and conditions of the Loan Agreement, Note, Mortgage Security Agreement, Guaranties and all related loan documents (collectively, the "Loan Documents"), by failing and omitting to pay the payments as they became due thereunder, specifically the January 1, 2025, payment, and each subsequent payment thereafter and any applicable grace period has expired. Norman Declaration, ¶ 10.

**B. <u>The Foreclosure.</u>**

19. Prior to filing a complaint in mortgage foreclosure, Movant's counsel obtained foreclosure title search reports from Advantage Foreclosure dated June 9, 2025 (the "Title Reports") confirming, *inter alia*, the record ownership of the Mortgaged Property and the recording of the Mortgage, Assignment of Rents and assignments thereof as set forth above (the "Title Report"). Norman Declaration, ¶ 11. A true and correct redacted copy of the Title Report (without exhibits) is attached to the Norman Declaration as Exhibit "P" and is incorporated herein by reference.

20. The Loan went into default for non-payment, and on February 7, 2025, Newtek, through counsel, issued a notice of default (the "Default Notice"). Norman Declaration, ¶ 12. A

true and correct copy of the Default Notice is attached to the Norman Declaration as Exhibit "Q" and is incorporated herein by reference.

21. Newtek filed a Complaint in Mortgage Foreclosure in the Supreme Court of the State of New York, New York County, on July 16, 2025 at Index No. 850306/2025 (the "Foreclosure Action"). After service of the Complaint and Summons, Newtek and the Debtors attempted to negotiate a forbearance agreement but were unable to come to agreement. While Newtek began to seek the appointment of a receiver for the Mortgaged Property, the Debtors sought bankruptcy protection. Norman Declaration, ¶ 13.

22. Newtek believes and avers that the Debtors filed their respective Petitions solely for purposes of hindering and delaying Newtek in the exercise of its available rights and remedies under the Loan Documents and applicable state law, and to improperly obtain the discharge of its principals' obligations to Newtek as jointly and severally liable and unconditional guarantors. Norman Declaration, ¶ 14.

## C. **Bankruptcy Filings and Newtek's Claim.**

23. Trask Radio's Schedules of Assets and Liabilities value its Mortgaged Property at $8,220,000, and its personal property at $594,531.08, consisting of cash of $647.47, intangibles and intellectual property valued at $222,441.00, and other assets valued at $371,442.61 (Trask D.I. No. 3).

24. Advanced Aerospace's Schedules of Assets and Liabilities value its personal property at $7,660,412.31, including machinery, fixtures and equipment "book-valued" at $5,988,836, intangibles consisting of construction architecture, consulting fees, engineering and permits, collectively valued at $1,562,972.00, inventory valued at $38,804.27, cash of $65,373.68, accounts receivable of $4,006.36, and deposits of $420.00 (Advance D.I. No. 3).

25. As of October 31, 2025, the Loan was in default for Borrowers' and Guarantors' failure to timely make all of the required monthly payments, and the following sums were due and owing under the Loan Documents:

| | |
|---|---|
| Principal Balance: | $7,132,915.46 |
| Interest to 10/31/2025: | 768,827.05 |
| Late Fees: | 28,738.23 |
| Expenses: | 6,376.75 |
| **Total Real Debt:** | **$7,936,857.49** |

Plus additional daily interest accruing after 10/31/2025 at the rate of prime, as published in the Wall Street Journal, plus 2.75% % per annum, and such additional fees and costs, including, without limitation, attorney's fees and costs, as are incurred and allowed by the terms of the loan documents and applicable law.

Norman Declaration, ¶ 15.

26. Per written appraisal dated May 7, 2025, by All Island Valuation Services, LLC, the Mortgaged Property was valued as having a fair market value of $8,220,000 as of April 15, 2025, based on four (4) comparable sales, and $8,100,000 based on five (5) comparable rental properties (the "Appraisal"). Norman Declaration, ¶ 16. A true and correct redacted copy of the Appraisal is attached to the Norman Declaration as Exhibit "R" and is incorporated herein by reference.

27. The Appraisal does not adequately reflect the true value of the Mortgaged Property, as reflected in that certain formal internal review, conducted by Cushman & Wakefield dated May 8, 2025 (the "Appraisal Review"), which, noting Federal Reserve interest rate concerns, the failure of three regional banks ties to the Federal Reserve's interest rate hikes, uncertainty in the financial and commercial real estate markets, and the impact of tariffs, resulting in reduced liquidity, made adjustments to the comparable sales used for the Appraisal, and reduced the appraised fair market value of the Mortgaged Property from $8,220,000 to only

$6,200,000. Norman Declaration, ¶ 17. A true and correct redacted copy of the Appraisal Review is attached the Norman Declaration as Exhibit "S", and is incorporated herein by reference.

28. Debtors are not known to be carrying required insurances on the Mortgaged Property, and Newtek has been compelled to obtain its own, "force-placed" insurance thereon to protect its security interests therein. Norman Declaration, ¶ 18.

29. Newtek has already commenced its Foreclosure Action, and is fully capable of proceeding therewith and otherwise liquidating its own collateral for the Loan, and does not require assistance through a chapter 11 liquidation. Norman Declaration, ¶ 19.

30. The Debtors' proposed liquidation can only cause the Debtors, creditors and parties-in-interest additional fees and costs which cannot be recovered. It appears there is no benefit for the Debtors' unsecured creditors to be derived from the Debtors' proposed liquidation. Norman Declaration, ¶ 20.

31. In the event that Newtek is unable to liquidate the Debtors' real and personal property collateral for a sufficient amount to completely satisfy the Loan, it will have a significant deficiency claim to pursue against the Guarantors. The Debtors' Plan impermissibly discharges the Guarantors' liability to Newtek and cannot be approved. Norman Declaration, ¶ 21.

32. This calls into question the value of the Debtors' personal property, which has not been given a value in the Amended Plan.

## IV. RELIEF REQUESTED.

**Denial of Confirmation.**

33. Paragraphs 1 through 32 above are incorporated herein by reference.

34. Section 1129 of the Bankruptcy Code provides as follows:

> § 1129. Confirmation of plan
>
> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> (1) The plan complies with the applicable provisions of this title.
>
> (2) The proponent of the plan complies with the applicable provisions of this title.
>
> (3) The plan has been proposed in good faith and not by any means forbidden by law.
>
> (4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable. . . .
>
> (b) (1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> (A) With respect to a class of secured claims, the plan provides--
>
> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on

account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims--

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests--

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under

> section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.
>
> (d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.
>
> (e) In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

11 U.S.C. § 1129.

35. The Amended Plan, at Sections 3.4 and 3.5 describe Newtek's senior mortgage-secured claim, as well as the U.S. Small Business Administration's junior mortgage-secured claim of approximately $4,945,000, respectively.

36. Section 5 of the Amended Plan classifies allowed non-tax priority claims in Class 1, Newtek's allowed secured claim in Class 2, the SBA's allowed secured claim in Class 3, general unsecured creditors' claims in Class 4, inter-company claims in Class 5, and the Debtors' interests in Class 6.

37. Section 7.1 of the Amended Plan provides that on the "Effective Date", the Debtors will transfer their collective interests in their real property and personal property to Newtek and the SBA, as joint owners, "free and clear of Liens, claims and encumbrances" and "in full and final satisfaction, settlement, and release of" their secured claims. This impermissibly bars Newtek and the SBA from prosecuting their deficiency claims under third

party guarantees.

38. Section 10.1 of the Amended Plan, in describing the means for its implementation, ascribes a combined value for the Debtors' real and personal property assets of "$14,285,493, which represents the Debtors' costs to purchase and improve the Real Property and Personal Property, less accumulated depreciation." That value is excessive and unsubstantiated.

39. It has long been held that third-party releases contained in a chapter 11 plan are prohibited by Bankruptcy Code Section 524(e), except when extraordinary circumstances are present. *United States of America v. Continental Airlines (In re Continental Airlines),* 134 F.3d 536 (3rd Cir. 1998), *cert denied,* 525 U.S. 929, 119 S.Ct. 336, 142 L.Ed.2d 277 (1998); *First Fidelity v. McAteer*, 985 F.2d 114, 118 (3rd Cir. 1993) (Section 524(e) assures creditors that the discharge of a debtor will not preclude them from collecting the full debt from co-debtors); *In re Applewood Chair Co.,* 203 F.3d 914, 918 (5th Cir. 2000). The overly broad third-party releases contained in the Plan and fail to satisfy the "fair and equitable" requirements of Sections 1129(b)(2)(A).

40. What the Amended Plan is proposing with respect to Objector and the SBA is a so-called "dirt for debt" plan to completely satisfy both of their claims, despite their combined debt being significantly in excess of the value of the Mortgaged Property and Personal Property Collateral.

41. The "dirt for debt" plan is a recognized concept in Chapter 11 bankruptcies. *See, e.g., In re Ponce De Leon 1403, Inc.,* 523 BR 349 (Bankr. D. PR. 2014) (denying such a plan after reviewing numerous appraisals).

42. However, Bankruptcy Code Section 1129(b)(2)(A)(iii) requires that the secured creditor receive the "indubitable equivalent" of its claim. To determine whether the surrendering of collateral constitutes the "indubitable equivalent" of a secured claim, the Court must determine the value of the real estate being surrendered. *See, In re Walat Farms, Inc.,* 70 B.R. 330, 333 (Bankr. E.D. Mich. 1987). (key issue is whether the land offered is worth the amount of the claim).

43. Based on the Appraisal, the Amended Plan treats Newtek as a fully secured creditor, when in fact, as established by the Appraisal Review, that is not the case. Newtek is in fact an under-secured creditor, and anticipates that a significant deficiency claim against the Guarantors will remain after liquidating the Debtors' real and personal property, one that the Amended Plan proposes to improperly eliminate by discharging the Guarantors.

44. The Debtors' scheduled values for their personal property does not significantly impact the foregoing analysis, because those scheduled valued do not accurately reflect what can be anticipated by way of net sale proceeds to be derived therefrom. Nor do such items as the Debtors' intellectual property and general intangibles constitute assets that can actually be liquidated for anywhere close to their scheduled value.

45. Given the adverse market factors and the illiquidity of the Mortgaged Property as noted in the Appraisal Review, the Amended Plan unfairly shifts market risks exclusively to Newtek, and discriminates against Newtek by seeking to completely discharge its manifestly probable deficiency claims against the Guarantors.

46. The Amended Plan therefore fails to satisfy the "fair and equitable" requirements of Section 1129(b)(2)(A)(iii), and cannot be confirmed.

**WHEREFORE**, Newtek Business Services Holdco 6, Inc. respectfully requests that this Honorable Court enter an Order or Orders denying confirmation of the Debtors' Amended Plan and granting such other and further relief as is just and proper under the facts and circumstances presented.

## NOTICE

47. Notice of this Objection will be provided by facsimile, electronic transmission or mail delivery (except as otherwise noted) to (a) the Debtors, and (b) the United States Trustee for the Southern District of New York. In light of the nature of the relief requested herein, Newtek submits that no other or further notice need be given and that the notice provided by Newtek is sufficient.

Respectfully submitted,

**CHARTWELL LAW**

Dated: New York, NY
February 19, 2026

By: ___s/Novica Petrovski________
Novica Petrovski, Esquire (NY ID 4370151)
One Battery Park Plaza, Suite 701
New York, NY 10004-1445
Telephone: (212) 968-2300
e-mail: npetrovski@chartwelllaw.com
and
John J. Winter, Esquire (*Pro Hac Vice*)
700 American Avenue, Suite 303
King of Prussia, PA 19406
Telephone: (610) 666-8437
Telecopier: (610) 666-7704
e-mail: jwinter@chartwelllaw.com

*(Attorneys for Small Business Lending, LLC, as Servicer for Newtek Business Services Holdco 6, Inc.)*