JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
By: BRIAN E. HILBURN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2614
E-mail: brian.hilburn@usdoj.gov

**Hearing Date:** **September 15, 2026**
**Hearing Time:** **10:00am**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| TRASK RADIO LLC, et al., | Case No. 25-12431 (DSJ) |
| Debtors. | (Jointly Administered) |

# LIMITED OBJECTION OF THE UNITED STATES OF AMERICA, ON BEHALF OF THE U.S. SMALL BUSINESS ADMINISTRATION, TO CONFIRMATION OF DEBTORS' COMBINED FIRST AMENDED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2614

BRIAN E. HILBURN
Assistant United States Attorney
*Of Counsel*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................4

I. THE NON-CONSENSUAL THIRD-PARTY RELEASES IN THE PLAN ARE UNLAWFUL …………………………………………...…4

II. THE PLAN'S TREATMENT OF THE SBA'S LIENS FAILS TO SATISFY SECTIONS 1124 AND 1129(b)(2)(A) OF THE CODE .......................................7

CONCLUSION .....................................................................................................................9

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Harrington v. Purdue Pharma L.P.*
603 U.S. 204 (2024) ........ 5, 6, 7

*In re DBSD N. Am., Inc.*
634 F.3d 79 (2d Cir. 2011) ........ 9

*In re GSC, Inc.*
453 B.R. 132 (Bankr. S.D.N.Y. 2011) ........ 9

**STATUTES**

11 U.S.C. § 541 ........ 6

11 U.S.C. § 1123(b) ........ 6

11 U.S.C. § 1123(b)(3) ........ 6

11 U.S.C. § 1124 ........ 1, 8

11 U.S.C. § 1124(1) ........ 8

11 U.S.C. § 1126(f) ........ 8

11 U.S.C. § 1129(b)(2)(A) ........ 1,9, 10

11 U.S.C. § 1129(b)(2)(A)(i) ........ 9

11 U.S.C. § 1129(b)(2)(A)(ii) ........ 9

11 U.S.C. § 1129(b)(2)(A)(iii) ........ 9

**OTHER AUTHORITIES**

7 Collier on Bankruptcy ¶ 1124.03 (16th ed.) ........ 3

The United States of America, on behalf of the U.S. Small Business Administration (the "SBA"), by its attorney James M. McDonald, United States Attorney for the Southern District of New York, hereby objects to confirmation of the Debtors' Combined First Amended Disclosure Statement and Joint Chapter 11 Liquidating Plan of Reorganization dated January 14, 2026 (Dkt. No. 44) (the "Plan") filed by Trask Radio LLC ("Trask") and Advanced Aerospace LLC d/b/a Balcon Salon ("Balcon Salon," and together, the "Debtors").

**PRELIMINARY STATEMENT**

The Debtors' proposed Plan cannot be confirmed for two reasons. First, the Plan purports to provide a release of liability by the SBA not just against the Debtors themselves, but also against three non-debtor guarantors. The SBA objects to this non-consensual third-party release that is barred by *Purdue*.[1] Second, the Debtors have impaired the SBA's claim, and treatment of the SBA under the Plan is not fair and equitable in violation of Sections 1124 and 1129(b)(2)(A) of the Bankruptcy Code.

The SBA holds a second mortgage on the Debtors' real property and a second-priority security interest in their personal property. In addition to any claims the Government has against the Debtors, the Government also has the ability to pursue three non-debtor guarantors of the SBA Loans issued to the Debtors. But the Plan, which does not pay the SBA's outstanding loans in full and will thus require collection from the non-debtor guarantors in order to obtain full payment, purports to release the SBA's liens, declares the loans to be satisfied, and eliminates the SBA's ability to recover against non-debtor guarantors. The Government does not consent to this treatment. Moreover, the Debtors have failed to provide fair and equitable treatment to the SBA

[1] The SBA is engaged in discussions with the Debtors and Newtek concerning a potential consensual resolution and a contemplated further amended plan. Nothing herein is intended to prejudice those discussions.

by requiring the SBA to become a joint owner of the Debtor's property with another creditor in violation of 11 U.S.C. § 1129(b)(2)(A). The SBA objects to this treatment.

## BACKGROUND

1. On October 31, 2025 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. Dkt. No. 1.

2. The cases are being jointly administered. *See* Dkt. No. 16.

3. Trask owns the real property at 674 9th Avenue, New York, New York (the "Real Property"), which Balcon Salon leases and operates as a bar. Plan §§ 3.1, 2.1(kk); Affidavit Pursuant to Local Bankruptcy Rule 1007-2 at 1 (Dkt. No. 5) ("Einstein Aff.").[2]

4. In July 2024, the Debtors obtained a loan from Business Initiative Corporation of New York in the original principal amount of $5,000,000 (the "BIC SBA 504 Loan"). Trask granted a second priority mortgage on the Real Property, and the Debtors granted a second priority security interest in their personal property. Plan § 3.5; Einstein Aff. at 2–3.

5. The BIC SBA 504 Loan and all rights in the BIC SBA 504 Loan documents were assigned to the SBA. *Id*.

6. The SBA filed a proof of claim. *See* Claim 2-1 (the "SBA Claim"). The SBA Claim indicates that, as of the Petition Date, the Debtors owe SBA $5,170,775.94. The SBA asserted in the SBA Claim that all of the claim is secured. A copy of the BIC Loan documents, UCC-1, and security agreement are attached to the SBA Claim.

7. Repayment of the BIC SBA 504 Loan to SBA is guaranteed by Tito Rocks LLC, Eric L. Einstein, and Justin Buchanan (the "SBA Guarantors"). Plan § 3.5; Einstein Aff. at 2–3. The

---

[2] The paragraph numbering in the Einstein Affidavit is not sequential. The affidavit's narrative sections are numbered 1 through 36, and the section captioned "Particular Information Required by Local Bankruptcy Rule 1007-2" then restarts at paragraph 26 and proceeds irregularly, omitting certain numbers and duplicating others. The SBA therefore cites the Einstein Affidavit by page number.

Debtors scheduled the SBA's claim at $4,945,371. Dkt. No. 3 (Schedule D ¶ 2.2). As noted above, on January 22, 2026, the SBA filed proof of claim No. 2-1, asserting a secured claim of $5,170,775.94.

8. The Debtors' Schedules indicate that the SBA lien (taken over from the Business Initiative Corporation of New York) is second in priority to the lien of Newtek Business Services Holdco 6, Inc. and identifies the SBA's lien as a "Mortgage and Security Interest." Dkt. No. 3 (Schedule D ¶ 2.2).

9.

10. Newtek Business Services Holdco 6, Inc. ("Newtek") holds a first mortgage on the Real Property and a first-priority security interest in personal property. Plan § 3.4; Einstein Aff. at 2; Dkt. No. 3 (Schedule D ¶ 2.1).

11. Newtek filed a proof of claim, *see* Claim 1-1 (the "Newtek Claim"). The Newtek Claim indicates that, as of the Petition date, the Debtors owe Newtek $7,935,855.74. Newtek's objection states that, as of the Petition date, Newtek was owed $7,936,857, including interest, fees, and expenses. *See* Dkt. No. 50 ¶ 25 (Newtek Objection).

12. Debtors thus have a first secured lender (Newtek) with claims totaling approximately $7,936,857, and a second secured lender (SBA) with claims totaling $5,170,775.94, for a total amount owed to these secured creditors of approximately $13,107,633 (the "Total Secured Creditor Debt").

13. Class 3 of the Plan consists of the SBA's Allowed Secured Claim. Plan § 5.3. It is designated "Unimpaired/Presumed to Accept." *Id.* § 7.1. The SBA was not solicited and did not receive a ballot.

14. Class 3 treatment provides in full: "On the Effective Date, the Debtors will transfer their collective interests in the Real Property and the Personal Property to the SBA free and clear of Liens, claims and encumbrances, to be a joint owner with Newtek in their respective Pro Rata shares, in full and final satisfaction, settlement, and release of, and in exchange for, the SBA's Allowed Secured Claim." *Id*.

15. Section 10.3 provides that on the Effective Date "all mortgages, Liens, pledges, or other security interests against any property of the Debtors' Estates that previously have not been released shall be fully released, settled, and compromised."

16. Section 12.2 authorizes the Debtors to execute "any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan," and provides that if the Debtors decline to do so, "Newtek and the SBA, as the case may be, shall be authorized to execute such documents and/or notices on the Debtors' behalf."

17. The Plan further states that no later than the Effective Date, "Balcon Salon will cease any and all business operations," Plan § 10.2, eliminating the Real Property's only rent-paying tenant. Further, the Plan sets forth no terms governing the proposed joint ownership it purports to establish between Newtek and SBA.

18. For purposes of calculating the parties' shares, the Plan ascribes to the collateral a value of $14,285,493, "which represents the Debtors' costs to purchase and improve the Real Property and Personal Property, less accumulated depreciation." *Id.* § 10.1. As explained below, this valuation appears to be grossly overstated. The Debtors offer no appraisal supporting that figure beyond their own say so, and other valuations of the Real Property contradict this purported valuation. Debtors may be overvaluing the property to claim that by surrendering it to their secured creditors they are essentially wiping out any amounts due on their outstanding loans (and thus rendering

nothing left to collect from their guarantors). The unsupported valuation of $14,285,493 is notably greater than the Total Secured Creditor Debt of 13,107,632.94. In addition, and as noted above, the Plan includes release language purportedly eliminating any causes of action the secured creditors may have against guarantors on their loans. *See* Plan §§ 5.3, 7.1, 10.3, 12.2 (discussed *supra*).

19. But this approximately $14.3 million valuation of the Real Property is contradicted by other evidence. The Debtors' Schedules and First Day Declaration, by way of example, value the Real Property at $8,220,000, Dkt. No. 3 (Summary of Assets and Liabilities, line 1a); *id*. (Schedule D ¶¶ 2.1, 2.2); Einstein Aff. at 6. This amount is far less than the amount that Debtors assert in their Plan now that they plan to surrender the Real Property and benefit from a higher valuation in an effort to claim that the Total Secured Creditor Debt has been satisfied.

20. Moreover, two subsequent appraisals reflect that the Real Property is valued at between $6,200,000 and $8,220,000. Declaration of Jeffrey Norman ¶ 16 & Ex. R (Dkt. Nos. 50-1, 50-22, 50-23) ("Norman Decl."); *id*. ¶ 17 & Ex. S (Dkt. No. 50-24). And the Debtors purchased the Real Property in 2023 for $7,000,000. Plan § 3.7; Einstein Aff. at 4. Since the Total Secured Creditor Debt is $13.1 million, surrendering the Real Property to their secured creditors would not pay off all of their secured debt, leaving a deficiency that the secured creditors would need to pursue against the guarantors on the debt in order to obtain full payment.

21. But the Plan instead improperly purports to eliminate the right of creditors to pursue non-debtor guarantors in violation of *Purdue*. The senior secured creditor has similarly objected that the Plan "impermissibly bars Newtek and the SBA from prosecuting their deficiency claims under third party guarantees." Dkt. No. 50 ¶ 37.

## ARGUMENT

### I. THE NON-CONSENSUAL THIRD-PARTY RELEASES IN THE PLAN ARE UNLAWFUL

22. The Plan provides a non-consensual third-party release that the Supreme Court has found to be unlawful. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ("*Purdue*"). Specifically, in addition to purporting to resolve the Debtors' liability to the SBA, the Plan also purports to eliminate the SBA's ability to pursue three non-debtor guarantors of the BIC Loan.

23. The treatment of Class 3 under the Plan provides that the transfer of a pro rata share of the Real Property and Personal Property is made "in full and final satisfaction, settlement, and release of, and in exchange for, the SBA's Allowed Secured Claim." Plan § 7.1. Section 12.2 authorizes the Debtors to issue "any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan." These provisions in tandem would thus allow the Debtors to issue a "notice of satisfaction" of SBA's mortgage on the Real Property and "release" the guarantees of non-debtors, since nothing in the Plan "expressly preserve[s]" this right to pursue payments from guarantors as the Plan requires

24. That is a non-consensual third-party release of the SBA's claims against the SBA Guarantors. The senior secured creditor with the first mortgage has likewise averred in a declaration that the Plan "impermissibly discharges the Guarantors' deficiency liability." Norman Decl. ¶ 21; *see also* Dkt. No. 50 ¶ 37 (the Plan "impermissibly bars Newtek and the SBA from prosecuting their deficiency claims under third party guarantees"). But the Code does not authorize a plan provision that "effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Purdue*, 603 U.S. at 227. Here, the SBA does not consent to the release of its claims against non-debtor guarantors. The SBA's claims against Tito Rocks LLC, Mr. Einstein, and Mr. Buchanan arise under separate guaranty agreements to which the Debtors are not parties.

They are direct claims of the SBA against non-debtors. They did not become property of these estates under § 541, and "precisely nothing in § 1123(b) suggests those claims can be bargained away without the consent of those affected." *Purdue*, 603 U.S. at 220.

25.

26. Although the Supreme Court stated in *Purdue* that it did not "pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor," *Purdue*, 603 U.S. at 226, that reservation is inapplicable here.

27. Every valuation in the record—the Debtors' own Schedules, the appraisal Mr. Einstein acknowledged on the Petition Date, and the appraisal review submitted by the senior secured creditor—places the Real Property between $6,200,000 and $8,220,000. Dkt. No. 3; Einstein Aff. at 6; Norman Decl. ¶¶ 16–17 & Exs. R, S. That amount is far less than the Total Secured Creditor Debt of $13.1 million, and most if not all of the value from any sale of the Real Property would be allocated to the senior secured creditor. Accordingly, the SBA will need to pursue its rights against guarantors in order to recover the full amount owed.

## II. THE PLAN'S TREATMENT OF THE SBA'S LIENS FAILS TO SATISFY SECTIONS 1124 AND 1129(b)(2)(A) OF THE CODE

28. The Plan designates Class 3 as Unimpaired. Plan § 7.1. Section 1124(1) provides that a class is unimpaired only if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder." Any alteration of those rights constitutes impairment, "even if the value of the rights is enhanced." 7 Collier on Bankruptcy ¶ 1124.03 (16th ed.); *see In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 n.4 (2d Cir. 2011) (the Code "treats a claim as impaired unless the plan leaves in place all rights to which the claim entitles its holder"); *In re GSC, Inc.*, 453 B.R. 132, 177 (Bankr. S.D.N.Y. 2011) ("Any alteration to the claimant's legal, equitable, or contractual rights under a plan would make that claim impaired."). A secured creditor "should

receive cash, not property, to make that creditor's claim unimpaired," and a creditor "forced to receive property instead of the cash value of its claim" is impaired, because receiving property "would make it an owner" rather than leaving it free to reinvest. *GSC*, 453 B.R. at 177 (citations omitted).

29. The Plan does not leave the SBA's rights unaltered. It releases the SBA's mortgage and security interest, Plan § 10.3; authorizes execution of a "notice of satisfaction, release or discharge of any Lien ... not expressly preserved in this Plan," *id*. § 12.2, and substitutes for the SBA's right to payment a pro rata share of the Real Property and Personal Property as "joint owner with Newtek," *id*. § 7.1—in a building from which the Plan removes the only rent-paying tenant, *id*. § 10.2. The SBA is impaired. The Plan itself provides that "[i]f a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date." *Id*. § 7.3.

30. Because the SBA is impaired and does not accept the Plan, confirmation requires that the Plan be fair and equitable as to Class 3 under § 1129(b)(2)(A). That provision permits only three alternatives: (1) retention of the lien with deferred cash payments totaling at least the allowed claim, § 1129(b)(2)(A)(i); (2) a sale free and clear with the lien attaching to the proceeds, § 1129(b)(2)(A)(ii); or (3) the realization of the indubitable equivalent of the claim, § 1129(b)(2)(A)(iii). The Plan provides none of these alternatives. It does not permit the SBA to retain its lien. It does not sell the collateral or attach the SBA's lien to proceeds. And a pro rata share of property that every valuation in the record places between $6,200,000 and $8,220,000 and for which the SBA has no use, is not the indubitable equivalent of a perfected second mortgage.

Notably, none of these alternatives require the SBA to take title to the subject property. Accordingly, confirmation of the Plan should be denied.

**CONCLUSION**

For the reasons set forth above, the SBA respectfully requests that the Court decline to confirm the Plan. In the alternative, the SBA requests that any order confirming the Plan expressly provide that the SBA's claims against Eric L. Einstein, Justin Buchanan, and Tito Rocks LLC are unaffected and survive confirmation, and cannot be altered by any rights conferred on Debtors under the Plan; that no lien of the SBA be released unless the SBA receives compensation that the Court determines to be fair and equitable under § 1129(b)(2)(A); that Class 3 be determined to be impaired; and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 8, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: *_/s/ Brian E. Hilburn_*
BRIAN E. HILBURN
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2614
Email: brian.hilburn@usdoj.gov